UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BLAST ALL, INC., <br> *Plaintiff*, <br><br> v. <br><br> ERIK INGELSBY, DANIEL BOWSER, <br> *Defendants*. | Case No. 3:21-cv-00124 (KAD) <br><br><br><br> April 8, 2021 |

MEMORANDUM OF DECISION
RE: PLAINTIFF'S MOTION TO REMAND (ECF NO. 8)

Kari A. Dooley, United States District Judge:

Plaintiff Blast All, Inc. ("Blast All," or the "Plaintiff") commenced this action in the Superior Court for the State of Connecticut against Defendants Eric Ingelsby ("Ingelsby") and Daniel Bowser ("Bowser," and, collectively, the "Defendants") asserting a breach of the covenant of good faith and fair dealing implied in Defendants' employment agreement and tortious interference with business relations, both state law claims. On January 28, 2021, the Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. In the Notice of Removal, the Defendants contend that because Plaintiff's claims will require this Court to interpret a collective bargaining agreement between Blast All and the Defendants' union, Plaintiff's claims are preempted by Section 301 of the Taft-Hartley Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. They accordingly assert that this action is removable because it arises under federal law pursuant to 28 U.S.C. § 1331. On February 24, 2021, the Plaintiff moved to remand this matter back to the Superior Court pursuant to 28 U.S.C. § 1447, asserting that its claims are independent of the collective bargaining agreement and that this Court accordingly lacks

1

subject matter jurisdiction.[1]  The Defendants have filed an opposition and accompanying exhibits. (ECF No. 11.)  For the reasons that follow, the motion to remand is GRANTED and the case is ORDERED remanded to the Connecticut Superior Court for the Judicial District of Middlesex.

**Background and Allegations**

The following allegations are set forth in the complaint, a copy of which is attached to the Defendants' Notice of Removal.  (ECF No. 1-1.)

Blast All is an industrial painting contractor that is incorporated and maintains its principal place of business in Connecticut.  (Compl. ¶ 1.)  It specializes in structural steel maintenance and bridge painting.  (*Id.*)  At all relevant times Ingelsby and Bowser were employed by Blast All as painters, sandblasters, and riggers.  (*Id.* ¶ 4.)  Ingelsby resides in Connecticut and Bowser resides in Massachusetts.  (*Id.* ¶¶ 2–3.)  During their employment Defendants were assigned to work on a project involving the sandblasting and painting of a bridge over Interstate 90 in West Stockbridge, Massachusetts (the "Bridge Project").  (*Id.* ¶¶ 6–8.)  Blast All was subcontracted by a company called SPS New England, Inc. ("SPS"), which was a general contractor of the Massachusetts Department of Transportation, to perform its work for the Bridge Project.  (*Id.* ¶¶ 5–7.)

On June 5, 2019, Defendants were in the process of disassembling a scaffold for the Bridge Project when the scaffold collapsed, causing the Defendants to sustain injuries and damage to the scaffolding materials.  (*Id.* ¶¶ 10–11.)  The resulting losses were caused by the Defendants, who had removed their safety harnesses before the collapse, failed to employ reasonable safety practices in disassembling the scaffold, and failed to follow management instructions and manufacturer recommendations.  (*Id.* ¶¶ 12–13.)  At the time of these events Ingelsby was under the influence of cocaine, cannabinoids, and buprenorphine, and Bowser was under the influence

---

[1] It is clear that diversity jurisdiction is lacking as Defendant Ingelsby and Plaintiff are both citizens of Connecticut; nor do Defendants rely upon diversity jurisdiction in their Notice of Removal.

of cannabinoids.  (*Id*. ¶ 13.)  Defendants' conduct, which they fraudulently attempted to conceal from Blast All, constituted a violation of Blast All's safety and anti-drug policies and interfered with Blast All's rights to receive the benefits of its contract with SPS.  (*Id*. ¶¶ 14–15, 18.)

Based on the foregoing, Blast All brings claims against the Defendants for violation of the implied covenant of good faith and fair dealing, which it alleges was included in the employment agreements between Blast All and Ingelsby and Bowser, respectively.  (*Id*. ¶¶ 17–19.)  It does not, however, specify whether the employment agreements were oral or written, express or implied; nor does Blast All attach any purported employment contracts.  Blast All also brings claims for interference with business relations, alleging that the Defendants intentionally interfered with Blast All's business relationship with SPS.  (*Id*. ¶¶ 20–22.)   It asserts that its damages include loss of insurance coverage, increased insurance premiums, harm to its business reputation, loss of future work, and expenses incurred in defending and ultimately prevailing in an enforcement action brought by the Occupational Safety and Health Administration.  (*Id*. ¶ 22.)

As noted previously, Defendants maintain that these claims are preempted by Section 301 of the LMRA because each will require interpretation of the collective bargaining agreement ("CBA") between Blast All and Defendants' union, the International Union of Painters and Allied Trades, Local 1122 (the "Union").  They have attached as Exhibit A the Union's District Council 11 CBA governing bridge painting (ECF No. 11-1), which they represent incorporated the terms of a separate CBA while the Defendants were employed in Massachusetts.  (*See* Defs.' Ex. B, ECF No. 11-2).  Ingelsby and Bowser have also each submitted affidavits indicating that aside from the District Council 11 CBA, neither Defendant ever entered into an individual employment contract with the Plaintiff.  (Defs.' Exs. C, D ¶ 3, ECF Nos. 11-3, 11-4.)  Thus, they assert, the only contract possibly at issue in the complaint is the CBA.

**Standard of Review**

The federal removal statute permits a civil defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Where federal jurisdiction is asserted by a defendant pursuant to the removal statute, 28 U.S.C. § 1441, 'the defendant has the burden of establishing that removal is proper.'" *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 26 (D. Conn. 2015) (quoting *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties*, 30 F.3d 298, 301 (2d Cir. 1994)). "On a motion to remand, the court construes all factual allegations in favor of the party seeking the remand." *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 551 (D. Conn. 1995). The Court may also look to materials outside of the complaint that bear on the jurisdictional question. *See Colacino v. Davis*, No. 19-CV-9648 (VB), 2020 WL 3959209, at *1 (S.D.N.Y. July 13, 2020). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Mihok*, 119 F. Supp. 3d at 26 (quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)).

**Discussion**

"The district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction under § 1331 is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Aetna Health, Inc. v. Kirshner*, 415 F. Supp. 2d 109, 112 (D. Conn. 2006) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

"The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.  While federal preemption is normally raised as a defense to a suit and thus would not support the exercise of federal question jurisdiction, the Supreme Court has recognized that under the doctrine of complete preemption, "certain statutes have such extraordinary preemptive force that 'any civil complaint raising this select group of claims is necessarily federal in character.'" *Aetna Health*, 415 F. Supp. 2d at 112 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)).

Section 301 of the LMRA is one such statute.  *See id*.  It provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  "Section 301 'governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.'" *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (*per curiam*) (quoting *Caterpillar*, 482 U.S. at 394).  "Thus, when resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a CBA, the state law claim 'must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.'"  *Id.* at 206–07  (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985)).  "When, on the other hand, a plaintiff covered by a CBA asserts 'legal rights *independent* of that agreement,' preemption does not occur."  *Id*. at 207 (quoting *Caterpillar*, 482 U.S. at 396).  "A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.'"  *Id*. (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486

5

U.S. 399, 407 (1988)). "In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle*, 486 U.S. at 409–10 (footnote omitted).

Here, Blast All argues that its claims will not require this Court to interpret the terms of the CBA between itself and the Defendants' Union because its claims do not derive from any rights or obligations conferred by the CBA. It instead characterizes its complaint as alleging a violation of its own safety and drug policies, which fall outside the scope of the CBA. And it is clear that Blast All does not assert a claim for breach of the CBA or even reference the CBA in its complaint. It is equally clear that "Plaintiffs who are covered by a union contract may bring independent state-law claims for breach of separate '*individual* employment contracts,' as long as the claims are not 'substantially dependent on analysis of a collective-bargaining agreement'—that is, they do not 'rely upon the collective agreement indirectly or address the relationship between the individual contracts and the collective agreement.'" *Zeyer v. Bd. of Educ.*, 98 F. Supp. 3d 425, 436–37 (D. Conn. 2015) (quoting *Caterpillar*, 482 U.S. at 394–95).

Yet Plaintiff, as observed above, does not define or attach the individual employment contracts (and attendant drug and safety policies) that purportedly give rise to its claims, prompting Defendants to argue that the only contract between the parties was the CBA and therefore Plaintiff's claims for breach of the covenant of good faith and fair dealing can derive only from the CBA. As such, adjudicating this claim will necessarily require analysis and interpretation of the CBA's terms, a role exclusive to the federal courts. As noted previously, Defendants have submitted affidavits attesting to the absence of an individual employment contract with Blast All.

(ECF Nos. 11-3, 11-4.)  They also cite, *inter alia*, *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142 (9th Cir. 1988), where the Court of Appeals for the Ninth Circuit held that an employee's state law claim for breach of the covenant of good faith and fair dealing brought in connection with her alleged bad faith termination by the defendant was preempted by the LMRA.  *See id*. at 1147–48 ("In the present case, Newberry's employment contract was the collective bargaining agreement, and her cause of action, alleging that her employer did not practice good faith or fair dealing, requires us to interpret the specific language of the agreement's terms").  However there the plaintiff made specific references to the CBA's provisions in her complaint, and even brought a grievance under the CBA following her termination.  *See id.* at 1447.

Here, by contrast, although the complaint alleges the existence of an employment agreement in little more than conclusory terms, it is clear that Blast All is not asserting a breach of the CBA or the covenant of good faith implied therein.  And under Connecticut law, "[a] claim for breach of the implied covenant may be asserted not only when parties enter into an express contract but also if they enter into an implied contract." *Dr. Al Malik Off. for Fin. & Econ. Consultancy v. Horseneck Cap. Advisors, LLC*, No. 3:19-CV-1417 (JAM), 2020 WL 3415622, at *3 (D. Conn. June 22, 2020) (citing *Jones v. H.N.S. Mgmt. Co.*, 92 Conn. App. 223, 227 (App. Ct. 2005)).  "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Jones*, 92 Conn. App. at 227 (citation omitted).

Accordingly, whether any independent employment contract existed, whether it was express or implied, what terms it included if it is found to exist, and whether the covenant of good faith was breached are all questions to be adjudicated, yet it is simply not apparent that resolution of any of these questions "is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a CBA." *Whitehurst*, 928 F.3d at 206 (quoting *Lueck*, 471 U.S. at 213, 220). Indeed, as the Plaintiff observes, the Defendants do not identify any provisions of any operative CBA that the Court would be required to interpret in deciding the breach of covenant claim. Ultimately, if a fact finder were to conclude that no such individual employment agreements existed, judgment on the merits and not preemption would appear to be the appropriate result.

In reaching this determination the Court is mindful that doubts as to jurisdiction must be resolved against removability, *see Mihok*, 119 F. Supp. 3d at 26, and that factual allegations must be construed in the Plaintiff's favor, *Wise*, 889 F. Supp. at 551. Thus, to the extent there are ambiguities concerning the source of the obligation alleged to have been breached, such ambiguities further counsel in favor of remand. Moreover, the purpose of Section 301 preemption, the "uniform interpretation of collective-bargaining agreements," *Whitehurst*, 928 F.3d at 206 (quoting *Lingle*, 486 U.S. at 404), does not appear to be implicated here, where the central question is not whether Defendants breached a term of the CBA but, rather, whether they breached a covenant of good faith and fair dealing in an either express or implied separate agreement with Blast All. Again, whether such an agreement exists goes to the merits of the Plaintiff's claims and not to preemption.

Nor is it apparent that the resolution of the Plaintiff's tort claims for interference with business relations or business expectancies is "inextricably intertwined with consideration of the

8

terms of the labor contract," such that they are preempted by the CBA.  *Lueck*, 471 U.S. at 213.  In Connecticut "the elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 27, 761 A.2d 1268 (2000).  The complaint tracks these elements by alleging that Blast All had a relationship with SPS with which Defendants intentionally interfered while knowing of that relationship and that Blast All suffered actual losses and damages.  (Compl. ¶¶ 20–22.)  The only contract even remotely implicated by this claim is the subcontract agreement between Blast All and SPS.  (*See id*. ¶¶ 16, 20.)  It is therefore implausible that this Court would be called upon to interpret the CBA in deciding whether Defendants intentionally interfered with a relationship between their employer and this third-party contractor by their conduct alleged in the complaint.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion to remand is granted.  The Clerk of Court is directed to remand this case to the Connecticut Superior Court for the Judicial District of Middlesex.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of April 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE